# Louisville & Nashville Railroad Company v. Maxwell.

*Damages for Eviction from Train.*

(Decided November 7, 1914.   66 South. 669.)

1. *Carriers; Passengers; Contract; Tickets.*—As between a passenger and conductor, who cannot know what passed between the passenger and the ticket agent who sold him the ticket, the ticket is the sole and conclusive evidence of the passenger's right under the contract of carriage.

2. *Same; Denial of Right; Boarding Wrong Train.*—A passenger's right, as evidenced by his ticket contract to be carried to a certain station, is not denied, where he is put off by the conductor at the station nearest his destination to await the train which stops at said station, he being on a train which, under the company's rule, does not stop at said station.

3. *Same; Rule of Carriage; Stations.*—Railroads may prescribe reasonable rules for the conduct of their trainmen, such as certain passenger trains shall stop only at certain stations.

4. *Same; Duty of Passenger; Inquiry as to Train.*—It is a passenger's duty to inform himself as to what train will deliver him at his destination before taking passage; hence, his not doing so and not being misinformed by the agents of the carrier as to a train not stopping at his station, he is without remedy for being put off to await a train which does stop at his station.

5. *Same; Ejection; Right of Action.*—Where a passenger boards a train which does not stop at his point of destination under the company's rules, any right of action for being put off at an intermediate station to await the arrival of a train which does stop at his station is not for breach of his ticket contract, but for misinformation given him by the agent selling him the ticket.

## 48 SUPREME COURT

APPEAL from Blount Circuit Court.

Heard before Hon. J. E. BLACKWOOD.

Action by Roscoe S. Maxwell by next friend, against the Louisville & Nashville Railroad Company, for damages for eviction from a train, and for putting him off at wrong destination. Judgment for plaintiff, and defendant appeals to the Court of Appeals, the cause being transferred to the Supreme Court under the act creating the Court of Appeals. Reversed and remanded.

W. A. WEAVER, for appellant.

O. A. STEELE, and JOHN A. LUSK & SON, for appellee.

SAYRE, J.—Plaintiff, in the court below, appellee here, purchased from defendant's authorized agent at Atmore, in Escambia county, a ticket for transportation from that place to Garden City in Cullman county, and took passage accordingly. Defendant's line of railroad between these two points, which, we think we may safely assume to know, are something like 250 miles apart, passes through Montgomery and Birmingham. At Montgomery the conductor in charge of the train informed plaintiff that the train was not scheduled to stop at Garden City, and that it would be necessary for him to change cars at Birmingham and to continue his trip from that point on a local or accommodation train, which would go up a few hours later and stop at his destination. Again at Birmingham the conductor informed plaintiff that the train would not stop at Garden City, and that he would have to change cars. Shortly after leaving Birmingham the conductor informed plaintiff of defendant's rule concerning the operation of the train, and that he would have to get off at Blount Springs, the stopping place nearest his

destination, and take the accommodation train which would carry him the rest of the way, returning to plaintiff his ticket with an indorsement which showed his right to finished his journey on the local train. Plaintiff, indicating by his language that he preferred a lawsuit, refused to leave the train either at Birmingham or Blount Springs. At the last-named place plaintiff was ejected without special circumstances of humiliation or force other than such as his refusal to leave the train made necessary. Plaintiff alleges that his eviction was wrongful and on that ground prosecutes his action for damages.

Without detailing the evidence, for there can be no reasonable doubt about it, defendant's agent understood that plaintiff would take the train he did take and which carried him as far as Blount Springs. Having this fact in mind and evidently considering it to be of prime importance in the case, the trial court instructed the jury, in effect, that it was the duty of the agent who sold the ticket to inform plaintiff of the fact that the train he proposed to take would not stop at Garden City, and that it would be necessary to change cars at Birmingham, and that, in the absence of information of the sort given to plaintiff before he got aboard the train, plaintiff was by his contract entitled to an uninterrupted passage upon that particular train to the point of his destination. The court also refused instructions requested by defendant stating the proposition that it was the duty of plaintiff, if he considered the matter important, to ascertain whether the train which he was about to board would carry him without interruption to the place of his destination. .

(1, 3) As between a passenger and the conductor in charge of a railway train, who cannot in reason be expected to know what may have passed between the

ticket agent, the ticket held by the passenger is, as far as it goes, the sole and conclusive evidence of the passenger's rights under the contract for carriage.—*McGhee v. Reynolds,* 117 Ala. 413, 23 South. 68. All we know of the ticket contract in this case, and all the trial court knew, is this: That it showed plaintiff's right to transportation to Garden City. Unquestionably plaintiff was entitled to be finally set down at the point of his destination and not elsewhere. Defendant did not deny him that right. It only required him to make a change of cars at Birmingham which involved delay of a few hours. Railroad have the right to prescribe reasonable rules for the running of their trains, and as this court said in *A. G. S. R. R. Co. v. Carmichael,* 90 Ala. 19, 8 South. 87, L. R. A. 388, their highest duty demands that they exercise it. Considerations upon which that statement was based were set forth in the opinion. In *Manning v. L. & N. R. R. Co.,* 95 Ala. 392, 11 South. 8, 16 L. R. A. 55, 36 Am. St. Rep. 225, the court again commented on the great importance, the public necessity, of observing regulations in the running of trains. So in *L. & N. R. R. Co. v. Cornelius,* 6 Ala. App. 386, 60 South. 740, the Court of Appeals has very well stated some of the reasons why such rules should be made and why they need to be observed. It results that railroad companies cannot infringe upon regulations which become rules of public safety to accommodate a single passenger.

(4) In the *Carmichael Case, supra,* Stone, C. J., quoted, with approval, as the course of his argument indicates, this language from *P., C. & St. L. Ry. Co. v. Nuzum,* 50 Ind. 141, 19 Am. Rep. 703: "It is the duty of a person, about to take passage, to inquire when, where, and how he can go or stop according to regulations; and, if he makes a mistake, which is not induced

[Louisville & Nashville Railroad Company v. Maxwell.]

by the agents of the railroad company he has no remedy."

In a note to *Hutchinson v. Southern Ry. Co.*, 6 Ann. Cas. 24, the rule above stated and certain cognate rules of law are thus stated: "It is settled beyond controversy that, in the absence of contract or statute limiting their rights in this particular, railroad companies are not bound to stop all their trains at every station, but are required to stop at each station a sufficient number of trains to afford reasonable accommodations for travel to and from it. Having done this, they are at liberty to run other trains for other purposes, without incurring the duty of stopping at every station. Such regulations of their schedules are uniformly held to be reasonable. * * * It is held, accordingly, that the purchaser of a railroad ticket must avail himself of the sources of information at his command as to which train will deliver him at his destination, and take the right one, and that if he, without making inquiry, or being misinformed by the carrier's agent, takes a train which does not stop at his destination, he may be put off the train at the stopping point nearest his destination, without subjecting the carrier to liability" (citing many cases decided in many jurisdictions).

There is nothing to indicate that defendant's rule forbidding the train upon which plaintiff took passage to stop at Garden City, which was tantamount on the facts of this case to a requirement that plaintiff should change cars at Birmingham, is unreasonable. We can perceive nothing unreasonable in it. Its existence was proved, and notice of it was given to plaintiff before the train reached Birmingham. In these circumstances the conductor committed no wrong in requiring plaintiff to leave the train at Blount Springs.—*S. & N. R. R. Co. v. Huffman*, 76 Ala. 492, 52 Am. Rep. 349. De-

fendant did not thereby deny to plaintiff a complete performance of its contract according to its terms, but imposed upon plaintiff only the necessary consequence of the observance of a certain reasonable rule, according to which, as long as it existed, it had a right to operate its trains.

(5) In many adjudged cases railroad corporations have been held responsible to passengers upon their trains for injuries resulting from erroneous instruction or information given by their officers.—*Huffman Case, supra.* But in such cases another rule, arising out of the considerations stated in *A. G. S. R. R. Co. v. Carmichael, supra,* and the other cases to which we have heretofore referred, must be observed. This last-mentioned rule requires that passengers shall conform to the reasonable regulations adopted by the carrier for the operation of their trains, shall—to state the rule with reference to the fact upon which appellant relied in defense—change to another train at an intermediate point when properly required to do so, and rely upon his recovery of such damages as he may have suffered by reason of the ticket agent's mistake.

"It matters not whether his action sounds in tort or in contract. If in tort, then the rule is that he cannot recover any damages for an injury growing out of the negligence of the defendant, which, by the use of due care, he might have avoided. If in contract, then it was his duty to use due diligence to reduce the damages resulting from the breach, and failure to do so prevents recovery for any damages which might, by due diligence or care, have been avoided."

See a discussion of the principle in *L. & N. R. R. Co. v. Thomason,* 6 Ala. App. 365, 60 South. 506, where authorities are cited. It is proper to remark in this connection that plaintiff has not declared upon a spe-

[Birmingham, Ensley & Bessemer R. R. Co. v. Williams.]

cial contract for his transportation without a change of cars, to be inferred from instruction or information given by defendant's agent. Nor did the evidence warrant the conclusion that there had been such information or instruction, express or implied, though the possibility that the jury might so find appears to have been treated as a sufficient basis for plaintiff's recovery. Plaintiff's declaration is in tort as for a breach of duty arising by implication out of his ticket contract. But this theory of plaintiff's case is not based upon sound principles of law or public policy, as we have shown.

The trial court took a different view of the law of the case, and for resultant error the judgment must be reversed.

Reversed and remanded.

McClellan, de Graffenried, and Gardner, JJ., concur.