# Southern Railway Company *v.* Farquhar.

## *Injury to Passenger.*

(Decided April 15, 1915.   68 South. 289.)

1. *Carriers; Passengers; Who Are.*—Where one purchases a ticket but by mistake, and in good faith, and without fault attributable to the carrier enters the wrong train, such one is a passenger and entitled to protection as such against negligence for which the carrier is responsible, until after being informed of his mistake, his conduct renders him a trespasser.

2. *Same; Mistake in Entering Wrong Train.*—The conductor of a carrier on discovering that a passenger has boarded the wrong train must inform such passenger of his mistake and afford him a reasonable opportunity to leave the train, the care required depending on the circumstances.

3. *Same; Complaint.*—A complaint alleging that plaintiff was accepted as a passenger, that the conductor collected the ticket, and sometime thereafter informed him that he was on the wrong train, and that he would have to get off at the next station, and that the conductor negligently failed to notify the passenger when he collected the ticket that he was on the wrong train, and as a proximate result thereof he suffered the injuries specified, is based on the negligent failure of the conductor to notify the passenger at the time of the collection of the ticket that he was on the wrong train, and is good against demurrers that it does not appear that the passenger was unaware of the proper train, or as to what information he received as to the train he should take.

4. *Same.*—Where the action is against a carrier and based on the negligent failure of the conductor to stop the train and allow a passenger to alight who had gotten on by mistake, a complaint which fails to exclude the presence of circumstances rendering it unsafe to stop the train short of the point where the passenger was allowed to get off, was faulty.

5. *Same; Misdirecting as to Train; Liability.*—A passenger advised by trainmen to board the wrong train may recover such damages as he sustains thereby.

6. *Charge of Court; Ignoring Issues.*—Requested instructions which ignore issues supported by some of the evidence in the cause are properly refused.

7. *Carriers; Passengers; Boarding Wrong Train; Damages.*—Where a passenger was misdirected by a carrier's servant and thus caused to board the wrong train, or was negligently carried to a station on the wrong train, when he might with all prudence have been allowed to leave the train nearer to the station where he boarded it, he could recover the damages naturally resulting therefrom, and an award of $100.00 will not be disturbed as excessive.

APPEAL from Birmingham City Court.

Heard before Hon. JOHN H. MILLER.

Action by W. M. Farquhar against the Southern Railway Company. There was a judgment for plaintiff, and defendant appealed to the Court of Appeals, and it, under Acts 1911, p: 450, § 6, transferred the cause to the Supreme Court. Affirmed.

The following are the counts of the complaint mentioned: Count 3. "Plaintiff claims of defendant * * * for that defendant was operating a railroad between Birmingham and Selma. * * * Plaintiff avers that on or about * * * he became a passenger at Birmingham, his destination being Briarfield, and that he was accepted as a passenger between said points; that he paid his transportation from Birmingham to Briarfield, Ala.; that defendant accepted his ticket, and thereby agreed to carry him from Birmingham to Briarfield, and that on said date, while on said train, and after said train had left the station at Birmingham, the conductor in charge of said train, who was defendant's agent, and whose duty it was to collect the tickets and fare from passengers, passed through said train and collected plaintiff's fare or ticket; that some time thereafter the conductor returned and told plaintiff that he was on the wrong train, and that he would have to get off at the next station; that plaintiff was induced by said conductor to disembark from defend-

ant's said train at a point six miles from Birmingham and many miles short of his destination; that said conductor negligently failed to notify or inform plaintiff at the time he collected plaintiff's fare that plaintiff was on the wrong train, and as a proximate result of said negligence plaintiff was caused to suffer the injuries [which were set out]."

The fifth count is the same as the third, except that the negligence alleged is that after informing plaintiff he was on the wrong train the conductor negligently failed or refused to stop said train and allow plaintiff to disembark or get off of said train, and that as a proximate consequence he suffered the following injuries, which were set out. The first count alleges that defendant informed plaintiff as to which train would take him to Briarfield, his destination, and plaintiff thereupon got aboard of said train to go to Briarfield; that after the train had left Birmingham and had gone several miles, the conductor informed him that he was on the wrong train, and would have to get off at the next station, which he did under the direction of the conductor, and, failing to be able to obtain an accommodation there, he had to walk back to Birmingham, a distance of six miles.

The demurrers to count 1 were the general demurrers that it was vague, indefinite, and uncertain, did not state facts sufficient to constitute a cause of action, negligence as a mere conclusion, did not appear wherein defendant violated any duty it owed plaintiff, etc. The demurrers to the amended counts, which include counts 3 and 5, are that it did not appear that plaintiff himself was unaware of the proper train to board in order to go to Briarfield; it did not appear what information was given plaintiff as to the train he should board; and because it appeared that plaintiff

was not on the train going to Briarfield, and that plaintiff was properly caused to leave said train at the place alleged.

Plaintiff's evidence tended to show that, when he presented his ticket to the gateman, he was told to take the first one to the left, and that on going down the steps the first passage on the left was marked "Southern," and he went up that passage and found a Southern train standing there, and asked the flagman if that was the south-bound train, and he replied, "Yes, this train goes to Selma;" that he boarded the train, and the conductor came through and took his ticket and afterwards came back and told him he was on the wrong train, whereupon he asked to be let off, and the conductor refused, but told him he would put him off at the next stopping place, which was six miles from Birmingham, and he had to walk back.

The charge set out in the tenth assignment was as follows: "The court charges the jury that, if they find from the evidence that plaintiff looked at the sign indicating that the train he boarded was going west, instead of south, and then negligently got on the west-bound train, then you must find for defendant."

The charge set out in the sixth assignment is that the jury could not award plaintiff any damages on account of his walking from North Birmingham back to Birmingham.

STOKELY, SCRIVENER & DOMINICK, for appellant.

J. T. ROACH, and GEORGE D. FINLEY, for appellant.

MCCLELLAN, J.—(1) Where a person has regularly purchased a ticket for transportation by a carrier to a definite destination, and such ticket holder mistakes,

in good faith, and without fault attributable to the carrier, the train on which he has the right to be carried, and enters the wrong train of the carrier, on which his contract does not give him the right to be carried, he is a passenger until, after being informed of his mistake, his conduct renders him a trespasser, and is entitled to the protection accorded passengers against negligence for which the carrier is responsible.—4 Elliott on Railroads, § 1578a, p. 377; *Cin. R. R. Co. v. Carper,* 112 Ind. 26, 13 N. E. 122, 14 N. E. 352, 2 Am. St. Rep. 144; *Lake Shore Ry. Co. v. Rosenzweig,* 113 Pa. 519, 6 Atl. 545.

(2) It is the duty of the carrier's conductor who has discovered the fact to inform such person of his mistake and to afford him a reasonable opportunity to disembark or to put him off at a proper place.—*Lake Shore Ry. Co. v. Rosenzweig, supra.* The carrier has the right to eject a ticket holder who is on the wrong train, provided the ejection is effected in a proper manner and at a reasonably safe place under the circumstances. —*S. & N. R. R. Co. v. Huffman,* 76 Ala. 492, 52 Am. Rep. 349; *L. & N. R. R. Co. v. Johnson,* 92 Ala. 204, 9 South. 269, 25 Am. St. Rep. 35. Subject to the requirements for care in respect of the act of expulsion of one not entitled to ride on the train he enters, and in respect of the time, place, and circumstances under and at which the expulsion is effected, the carrier may eject him at any point, whether at or near a station or not.—*L. & N. R. R. Co. v. Johnson, supra.*

With reference to the stated duty to a passenger who is found to be aboard the wrong train, it cannot be affirmed, as a matter of law applicable under all circumstances, what would be or is a proper place for affording the passenger an opportunity to disembark or to eject him. Circumstances conceivable might, in the

interest of safety to the train, quite reasonably forbid the stopping of a train at points short of the next station after the passenger's error was discovered. The schedule of the train, with reference to which other nearby trains opposed or following were being operated, might suggest, in all proper prudence, the danger of stopping the train between stations. The nearness of the next station after the discovery of the passenger's error might, in and of itself, entirely justify the conductor in taking the passenger to that not remote station. Other illustrative circumstances may be readily supposed. But, on the other hand, it is equally as clear that the conductor would breach the stated duty to the passenger, of whose error that representative of the carrier has become aware, if he carries him an unreasonable distance, after such knowledge comes to the conductor, without advising him of the mistake and without affording the passenger a fair opportunity, in view of the care exacted on the part of the conductor by the rule declared in *L. & N. R. R. Co. v. Johnson,* *supra,* to leave the train. If, as has been held here, the carrier is not restricted in the carrier's right to eject one wrongfully on its train to any particular place or to a station's environs, then certainly a passenger who had, in good faith, mistaken the train he should have entered for transportation towards his destination should not be restricted to a station ahead in respect of his right to have a fair opportunity to disembark and save the further consequences of his error.

(3) Counts 3 and 5 show, as a matter of necessary inference at least, that the plaintiff was aboard the wrong train. The gist of the third count is the negligent failure of the conductor to notify the plaintiff at the time he collected his ticket that he was aboard the wrong train. Common knowledge and common ex-

perience alike lead to the conclusion that a conductor who collects the tickets on his train knows to what points the tickets collected read. That is, as all must know, a chief function of a conductor who collects tickets on his train. Being so, it must follow that to charge such an agent with negligent failure to notify a mistaken passenger of his error is necessarily predicated of the agent's present knowledge, when he takes up the ticket held by the erring passenger, of that passenger's mistake; and thereupon it became the duty of the thus informed agent to advise the passenger and to take account of the agent's further duty to allow him to disembark at a proper place, considering the circumstances of care and safety to which we have alluded. Our opinion is that count 3 was not subject to the grounds of demurrer addressed thereto.

(4) The gist of the fifth count is the negligent failure or refusal of the conductor, advised, as has been indicated, of plaintiff's error, to stop the train and allow plaintiff to disembark. This count is faulty in that it omits to exclude the presence of circumstances which may have rendered unsafe or undesirable the stopping of this train short of the point at which it was stopped, and plaintiff was allowed to disembark. But no ground of the demurrer, original or amended, took this objection to the count. The grounds assigned are without merit.

(5) The first count is based upon consequences attending the taking of the wrong train under misadvice or misdirections given by the defendant.—*S. & N. R. R. Co. v. Huffman, supra.*

(6) There was no error in submitting to the jury the issues made by the counts mentioned. Nor was there error in refusing the special charge set out in the tenth assignment. It would have, if given, excluded from the

jury's consideration, as under the issues raised by the first count, the asserted misdirection or misinformation given the plaintiff at or about the entrance to the cars by a representative of defendant.

(7) If the plaintiff was misdirected by defendant's servants or was negligently carried to North Birmingham, when he might, with all prudence, have been allowed to leave the train nearer to station at Birmingham, he was entitled to recover sufficient damages to compensate him for the wrong and its natural proximate consequences. The amount awarded by the jury is $100. It cannot be pronounced excessive, under the evidence before the jury, and to which the jury might reasonably have given a proper credence. Whether, under the circumstances disclosed by this record, the plaintiff should have returned by street car, instead of walking, was a jury question, which the special instruction set out in the sixth assignment would have, if given, denied consideration by the jury.

No error appearing, the judgment is affirmed.

Affirmed.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.